IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| KENNETH C. COLE, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 12-3057-CV-S-ODS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION AFFIRMING
## COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying his application for Supplemental Security Income benefits. The Commissioner's decision is affirmed.

## I. BACKGROUND

Plaintiff was born in June 1961, earned his GED, and has no relevant prior work experience. During the hearing he amended his onset date to allege he became disabled on December 31, 2008, R. at 26-27, due to a combination of lumbar spondylosis, breathing and sleeping issues, and obesity. Most of the Record relates to Plaintiff's breathing and sleeping issues. The ALJ found these issues were not severe because they were controllable with treatment. R. at 10. Plaintiff does not raise any issues with respect to this finding, so the Court will not recount the evidence related to Plaintiff's breathing and sleeping issues. Plaintiff's arguments focus on his back issues, and the Court will do the same.

In April 2006, Plaintiff was involved in a car accident that caused him pain in his shoulder and lower back. R. at 221-23. An x-ray of shoulder was unremarkable, and an x-ray of his back revealed degenerative changes and disc space narrowing, with "[vertebral body height . . . well maintained and the vertebral bodies . . . in good

alignment." R. at 234-35. In November 2006, Plaintiff went to a chiropractor to seek treatment. As he explained, injections had not provided relief and he was advised to seek chiropractic treatment. Testing revealed normal range of motion in his lumbar region and nearly normal range of motion in his cervical region. A precise diagnosis is not reflected in the treatment notes, but by the end of July 2007 Plaintiff reported "feeling very well. Very happy with prog[ress]." Plaintiff's final visit was on August 1; the chiropractor's note for that visit indicates Plaintiff was "asymptomatic." R. at 197-202.

Plaintiff received regular medical care at Citizens Memorial Hospital & Clinics ("Citizens"). He went there on numerous occasions, seeking treatment for a wide range of ailments (including the flu, colds, earaches, and various injuries). However, between August 2006 (his first visit following his auto accident) and December 2008 Plaintiff did not complain about pain in his back, neck or shoulder. R. at 239-328. In December 2008 Plaintiff reported significant problems breathing and sleeping, but as noted earlier these issues have been found to be nonsevere because they are controlled. A series of tests were performed, and on February 13, 2009 he saw Dr. Kristopher Kaufmann at Citizens to establish care for chronic shortness of breath. R. at 467-72. He saw Dr. Kaufmann on February 18, March 6, and March 12 for problems with his hand and arm and continued treatment for breathing and sleeping problems. At no time did Plaintiff make any complaints about his back. R. at 452-66.

In early April, Plaintiff complained of low back pain that caused numbness and tingling after walking, standing or sitting for too long (although he was not experiencing symptoms at the appointment). Examination revealed muscle tenderness and spasms. Dr. Kaufmann diagnosed him as suffering from lumbago, prescribed naproxen, and told Plaintiff to exercise. R. at 448-51. Plaintiff returned the following week for evaluation of his breathing, but made no mention of any back problems. R. at 444-47.

Plaintiff's next visit to Dr. Kaufmann was on June 30, 2009. He reported "needing to take his pain medication daily and if he sits for too long he has to take 2 of his pain medications." He was taking four to five naproxen daily. In describing his symptoms, Plaintiff denied experiencing "sharp shooting pain, numbness, or tingling." Dr. Kaufmann added prescriptions for hydrocodone and flexeril. R. at 439-43. Plaintiff

2

returned five months later complaining of insomnia; there was no discussion of back pain.  R. at 433-36.  A visit in late December also failed to mention any back problems.  R. at 428-31.  The same is true of visits in January 2010.  R. at 419-27.

In April 2010, Plaintiff had an office visit to obtain "Medicaid paperwork."  He reported low back pain, that his "legs will go numb at times," and that he could not afford to pay for an injection.  R. at 415-18.  Dr. Kaufman completed a medical report on a form provided by the Missouri Department of Social Services indicating Plaintiff had low back pain and numbness in both legs from his thigh to his calf.  He also indicated Plaintiff could not walk more than thirty yards, but attributed this to Plaintiff's breathing problems and not to his back.  R. at 371-72.

On May 24, Plaintiff saw Dr. Mark Bult at Citizens' pain management clinic on referral from Dr. Kaufmann.  Plaintiff told Dr. Bult he had experienced back pain "off and on for the last 10 years after falling from a telephone pole."  Plaintiff rated his pain "at 9 and describes it as a throbbing or pressure that is associated with intermittent numbness of the left leg [and] sitting, walking, stair climbing, coughing, and changing position will aggravate the pain.  Massage will help to relieve it."  He described his medication as "somewhat helpful."  Dr. Bult also reported x-rays performed in May 2009 revealed mild degenerative disc disease and spondylosis at L3-L4 and L4-L5.  Examination revealed tenderness in the lower lumbar region, but hyperextension and hyperflexion did not aggravate the pain and Plaintiff was able to walk normally.  Dr. Bult administered an epidural steroid injection.  R. at 410-14.  On June 8,  Plaintiff reported experiencing initial relief following the injection, but the pain "returned to a level of 7."  Dr. Bult delayed consideration of further treatment while Plaintiff recovered from the flu.  R. at 405-08.  Plaintiff never returned to Dr. Bult as directed.

On July 16, Dr. Kaufmann completed a Medical Source Statement – Physical ("MSS") describing Plaintiff as suffering from mild to moderate degenerative disc disease.  In terms of functional abilities, he indicated Plaintiff could occasionally lift five pounds, could not walk or stand at all, could sit for two hours per day and ten to fifteen minutes at a time with frequent repositioning, could never climb, balance, stoop, or crouch and could only occasionally kneel or crawl.  Dr. Kaufmann also wrote that epidural injections had failed and there was a "workup in progress."  R. at 401-03.

3

In September 2010, Plaintiff was seen by Dr. Chris Weber for a consultative examination. Plaintiff told Dr. Webber that he could sit for only ten to fifteen minutes frequently and up to thirty minutes occasionally before needing to change positions. He reported his main activity was watching television, except he went shopping once a month (at which time he rode in the store's cart), cooked occasionally, and mowed the lawn on a riding mower. Examination revealed no tenderness but a below-normal range of motion in the lumbar region. X-rays revealed "mild" degenerative disc disease and spondylosis at L3-L4 and L4-L5. Dr. Weber opined that Plaintiff could lift and carry ten pounds occasionally and might "have difficulty doing a job that didn't allow him to sit or stand or change positions as he needed for comfort." This conclusion was "based mainly on subjective reports, and supported somewhat by range-of-motion although not completely." Dr. Webber also completed a MSS, indicating Plaintiff could lift and carry up to ten pounds occasionally, sit for six hours per day and sixty minutes at a time, stand and walk for up to one hour per day each and thirty minutes at a time each, and could frequently reach, handle, finger, or push and pull. R. at 489-500.

During the hearing, Plaintiff testified he could lift five to ten pounds regularly, stand for no more than five minutes before needing to sit, walk no more than fifty yards, and sit for no more than thirty minutes before needing to move. R. at 27-28. He testified that he did not work around the house, and that all chores were performed by a friend or his stepson. He spends most of his time watching television or visiting with friends who come to his home. R. at 29-31. Pain and discomfort causes him to nap or lie down at least three times a day for forty-five to ninety minutes. R. at 32. With respect to the effects of treatment, Plaintiff only stated that he "got shots in my back and they didn't seem to help." R. at 32.

The ALJ posed hypothetical questions to a vocational expert ("VE"). The first assumed a person of Plaintiff's age, education and experience who could perform a full range of light work but could stand or walk for thirty minutes at a time and needed the option to change between those positions, sit for thirty minutes at a time, could frequently bend and stoop and only occasionally could squat. The VE testified such a person could work as a storage facility rental clerk or counter clerk. The second hypothetical assumed Plaintiff could lift or carry five pounds could not stand or walk for

4

any significant period of time, could sit no more than two hours per day and fifteen minutes at a time, could only occasionally kneel and crawl, could not climb, balance, stoop, or crouch, and required frequent rest breaks. The VE testified such a person could not perform work in the national economy. R. at 34-35.

The ALJ found Plaintiff's residual functional capacity ("RFC") was consistent with the first hypothetical. He reached this conclusion after finding (1) some of Plaintiff's activities – such as shopping, cooking, riding a lawnmower – were inconsistent with the degree of limitation he described at the hearing, (2) Plaintiff's lack of earning history, which the ALJ found indicative of a desire to not work, (3) a lack of evidence indicating why Plaintiff's extreme back problems would start suddenly, (4) a lack of medical evidence supporting such extreme limitations. The ALJ discounted Dr. Kaufmann's overall assessment because (1) it was based more on COPD and related problems than it was based on Plaintiff's back issues and (2) Dr. Kaufmann's opinion was unsupported by or inconsistent with diagnostic data and other evidence in the Record. Based on the ALJ's findings regarding Plaintiff's RFC and the VE's testimony, the ALJ found Plaintiff could perform work in the national economy and is not disabled.

## II. DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Gragg v. Astrue, 615 F.3d 932, 938 (8th Cir. 2010).

5

A. Failure to Defer to Dr. Kaufmann

Plaintiff first contends the ALJ erred in failing to defer to Dr. Kaufmann's April 5, 2010 assessment as reflected on the report to the Missouri Department of Social Services.  Generally speaking, a treating physician's opinion is entitled to deference.  This general rule is not ironclad; a treating physician's opinion may be disregarded if it is unsupported by clinical or other data or is contrary to the weight of the remaining evidence in the record.  E.g., E.g., Anderson v. Astrue, 696 F.3d 790, 793-094 (8th Cir. 2012); Halverson v. Astrue, 600 F.3d 922, 929-30 (8th Cir. 2010); Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996).

The Court is not convinced Dr. Kaufmann was a treating physician for purposes of Plaintiff's back pain.  "The treating physician rule is premised, at least in part, on the notion that the treating physician is usually more familiar with a claimant's medical condition than are other physicians."  Thomas v. Sullivan, 928 F.2d 255, 259 n.3 (8th Cir. 1991) (citation omitted).  The length of the relationship is also a factor to be considered in determining whether a doctor can fairly be described as "treating" and, if so, how much weight should be accorded.  E.g., Martise v. Astrue, 641 F.3d 909, 925 (8th Cir. 2011); Brown v. Astrue, 611 F.3d 941, 951 (8th Cir. 2010).  Dr. Kaufmann saw Plaintiff five times before April 2010, and Plaintiff never made complaints about (and Dr. Kaufmann never evaluated) his back.  Dr. Kaufmann's April 5, 2010 report was rendered on the very first occasion where Plaintiff complained about back pain, which undercuts the longitudinal relationship normally expected of a treating doctor.  Moreover, Dr. Kaufmann referred Plaintiff to Dr. Bult for treatment, suggesting Dr. Kaufmann was not treating Plaintiff's back condition.

Dr. Kaufmann's MSS from July 2010 does not provide any further basis for concluding he was Plaintiff's treating physician.  Dr. Kaufmann did not treat Plaintiff's back condition between April and July, so Dr. Kaufmann still lacked the treating relationship necessary to be considered a treating physician.  While Plaintiff had seen Dr. Bult by that time there is no indication Dr. Kaufmann's opinion was based on Dr. Bult's assessment.  To the contrary, Dr. Bult did not have the opportunity to provide a

6

complete assessment because Plaintiff did not return to him as instructed. Dr. Kaufmann's qualifications for "treating physician status" were no different in July than they were in April.

Even if Dr. Kaufmann can be fairly characterized as a treating physician, the degree of deference due may be affected by the short period of time he was actually treating Plaintiff's back condition. In addition, the ALJ was entitled to consider the absence of diagnostic testing and the fact that Dr. Kaufmann's conclusions were largely based on Plaintiff's own complaints. While x-rays revealed mild degenerative disc disease, they did not reveal a condition that would be expected to result in the extreme limitations Plaintiff has alleged. In short, even if Dr. Kaufmann qualified as a treating physician, the ALJ was justified in discounting his opinion.

### B. The ALJ's Credibility Determination

While this is Plaintiff's third argument, the Court addresses it second because Plaintiff's remaining argument (relating to the RFC determination) partially depends on this issue. Plaintiff contends the ALJ did not properly evaluate his credibility. The critical issue is not whether Plaintiff experiences pain, but rather the degree of pain that he experiences. House v. Shalala, 34 F.3d 691, 694 (8th Cir. 1994). The familiar standard for analyzing a claimant's subjective complaints of pain is set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984) (subsequent history omitted):

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.
>
> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to

7

> subjective complaints, including the claimant's prior work
> record, and observations by third parties and treating and
> examining physicians relating to such matters as:
>
> > 1. The claimant's daily activities;
> > 2. the duration, frequency and intensity of the pain
> > 3. precipitating and aggravating factors;
> > 4. dosage, effectiveness and side effects of medication;
> > 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's
> subjective complaints solely on the basis of personal
> observations. Subjective complaints may be discounted if
> there are inconsistencies in the evidence as a whole.

739 F.2d at 1322. Here, there was a lack of diagnostic data indicating Plaintiff suffered from a condition that could be expected to result in the limitations he described. Plaintiff reported receiving significant benefit from chiropractic treatment, yet never sought it again. Dr. Bult recommended that Plaintiff return for further evaluation after the first round of epidural injections, but he did not do so. The failure to follow a physician's advice is inconsistent with complaints of disabling pain. E.g., Choate v. Barnhart, 457 F.3d 865, 872 (8th Cir. 2006). The paucity of complaints also undercuts Plaintiff's claim, and the Record does not support his

Plaintiff argues the ALJ overstated his daily activities in finding they indicated Plaintiff could perform gainful work, but this is not what the ALJ said. The ALJ did not find that (as Plaintiff insinuates) that Plaintiff engaged in substantial gainful activity. He did not go that far. The ALJ merely found Plaintiff's daily activities were inconsistent with the extreme degree of limitation Plaintiff testified to at the hearing. This inconsistency supports the ALJ's finding that Plaintiff's testimony overstated Plaintiff's actual limitations.

Plaintiff also faults the ALJ for using Plaintiff's lack of work and earnings as a factor weighing against his credibility. He first contends that this lack of work and earnings is justified by Plaintiff's long history of disability and inability to work – but the

8

Record does not establish such a history. To the contrary, to the extent the Record reveals anything before the onset date, it reveals Plaintiff's back problem was successfully treated in 2007 after being injured in the 2006 car accident, and his breathing problems initially arose in late 2008.

Plaintiff also contends that a poor work record cannot be considered when evaluating a claimant's credibility, but this is not a correct statement of law. The Eighth Circuit has specifically held that "[a] lack of work history may indicate a lack of motivation to work rather than a lack of ability." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001); Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004). The extent to which a poor work history is meaningful evidence of a claimant's lack of desire or willingness to work is a matter for the ALJ to evaluate and decide, along with all the other Polaski factors. E.g., Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006); Eichelberger, 390 F.3d at 590.

### C. Determination of Plaintiff's RFC

Plaintiff's final argument attacks the RFC. He essentially argues that an RFC can be based only on medical opinion, and by discounting Dr. Kaufmann's opinion the ALJ was left with no medical opinions from which an RFC could be derived.

While "a claimant's RFC is a medical question, . . . in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively." Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007). It is simply not true that the RFC can be proved *only* with medical evidence. Dykes v. Apfel, 223 F.3d 865, 866 (8th Cir. 2000) (per curiam). Evidence of Plaintiff's actual daily activities and the medical evidence in the Record was sufficient to support the ALJ's determination about Plaintiff's capabilities. The Court also notes the RFC was substantially similar to the consulting opinion offered by Dr. Weber.

9

## III. CONCLUSION

In the Court's assessment, Plaintiff's initial and primary claim was that he was disabled because of his COPD and related breathing and sleeping difficulties. As this condition improved, the importance of back pain to his claim increased. The ALJ ultimately concluded Plaintiff's COPD and related problems were not severe because they were controlled with treatment, and for whatever reason Plaintiff elected not to challenge this conclusion. The present Record does not contain substantial evidence suggesting he is unable to work. The Commissioner's final decision is affirmed.
IT IS SO ORDERED.

                                               /s/ Ortrie D. Smith
                                               ORTRIE D. SMITH, SENIOR JUDGE
DATE: May 24, 2013                   UNITED STATES DISTRICT COURT